May it please the Court. It's my pleasure to be here in front of the first all-asking panel. Simply put, this is a case about the pleading standard. The district court erred by dismissing Plaintiff's complaint without leave to amend because Plaintiff properly pleaded the facts and causes of action within the complaint, and alternatively, it was an abuse of discretion to not grant leave to amend because any alleged deficiencies could have been cured through an amended pleading. I am trying to identify just what the false statement was. Yes, Your Honor. The false statement is the relaxation statement. On the front of the product, it says... Ordinarily, melatonin and valerian are recommended by doctors as a way to help people get to sleep. The valerians relax them and the melatonin to fool their body into thinking it's nighttime. Yes, Your Honor, and that's true, and the recommended daily dosage of melatonin is 0.003. I read that in your brief, but I don't know, maybe for 12b6, that's good enough, and we have to, I don't know if that's a conclusion or a fact. If it's a conclusion, doctors prescribe anywhere from 0.1 to 10.0 milligrams, and people just differ in how they metabolize this stuff. Well, Your Honor, I'm relying on the natural medicines comprehensive database. I can imagine the natural medicines. Well, the recommended daily dosage is 0.3 to a maximum of 5 milligrams. Within the Lazy Cakes, it has 8 milligrams total. It's a small brownie. It's split in... And you're relying on this. You pleaded from this text, some natural medicines book? Well, and there's several sources. Look at the medical, the MD type text. Right, and there's several texts. It says, does it say on the package that it's 0.8 or rather 8? It's actually in two servings, four each. The brownie's very small and not too many people just have brownie. I love your statement in your brief that nobody can eat half a brownie. That is correct, Your Honor, and it is a sweet food. You know, it causes people to... I was trying to think of what's false. It's got melatonin and valerian. It says it's got melatonin and valerian. I think it says how much. People differ. The only thing that I could really see that was false is that the font reminded me very much of the 70s fonts and things like our crumb comics, and I was thinking people might overpay thinking it was an Alice B. Toklas brownie. That's a little bit before my time, Your Honor, but... Marijuana in them. Okay. And I think that's what they were kind of playing on, and I think maybe that's part of why the FDA had them pull the product. It was also involved because melatonin isn't approved as a safe ingredient within food. And simply put, to answer your question... It's an over-the-counter stuff that you buy both in the grocery store aisle for over-the-counter medicines and health aids and also in health food stores. Right, and I think when someone buys melatonin and takes it in a dosage that you suggested, such as 10 milligrams, they're taking it as a sleeping pill, not just something to relax. Okay, so could I back up? Forgive me for interrupting, counsel, but Judge Kleinfeld asked you what's the false statement, and you said the relaxation statement. Correct. Are you talking about a statement on the package or on the website page? It is on the package, and the client or appellant purchased from the website. Okay, so I'm looking at the package, and it says the original Lazy Cakes, and there's a little cartoon figure, and it says relaxation brownies. Yep, and then on the back, and then there's another statement where it says relaxation baked in. From those statements, appellant thought he was buying a product that was going to help him relax, not cause slurred speech and knock him out. Okay, so the complaint says he intended to buy a sleep aid. Then he intended to buy a relaxation aid. He intended to buy a relaxation aid, so how is the relaxation statement the misstatement? Because it didn't cause him to relax. It caused extreme fatigue, slurred speech, and knocked him out, and I think there's a difference between relaxing and sleeping. Okay, so it's sort of a question of degree. Yes, Your Honor. Okay. And that the package, maybe it will help to explain on the record. What we have in the excerpt is a photo of the front of the package, not the back of the package, and I didn't see in the record a picture of the screenshot. These brownies were purchased online. The record tells me that. But I don't know what the web page said, so that's at a bit of a disadvantage there. But I take it it's uncontested that the back of this package explain that there's melatonin inside and how much. Yes, Your Honor, but no, it did not, it didn't have a warning saying 8 milligrams is too much to take at one time. Had a palant known that 8 milligrams would cause him slurred speech and make him pass out, he wouldn't have purchased the product or wouldn't have eaten it all at once. How do you distinguish it from buying a pound of coffee? If you brew the whole pound of coffee and drink the whole thing, it will make you pretty sick. But it doesn't say on the pound of coffee, don't drink more than a few scoops at one sitting. Or for that matter, when you buy bottled water, if you drink too much of it, you drop dead from hyponatremia. It happens to runners from time to time. The water has no cautions on it, warning of the dose. Your Honor, I think it comes down to what reasonable consumers expect, and coffee is a pretty well-known product. Water, very well-known. Melatonin isn't as well-known, and someone walking down the aisle who's not as sophisticated. I don't know about water not being well-known. People are familiar with the substance, but the reason that the runners drop dead from time to time is not many, not all the runners realize that you can drop dead from drinking too much water. They think from the ads that water is good for you. Correct, Your Honor, but they wouldn't be dropping dead from just drinking one bottle. And in this case, the opponent bought one brownie, ate one brownie, and had adverse results. The false statement is not warning that one brownie could make you awfully sleepy. Yes, Your Honor. It's essentially a sleeping pill. It's not a relaxation aid. And the proper warning would have said something along the lines of eight milligrams is too much to take at one time. Based on what? Based on the fact that eight milligrams of melatonin causes it. Where in the record can we find scientific proof that says eight milligrams is going to do that? And, Your Honor, that's something that we could cure through an amendment, and that's our alternative argument is that leave to amend should have been granted because any of these questions could have been better explained through amended pleading. And I do admit that the complaint could have expressed that a little bit in more detail, but as far as the pleading standards under Twombly and Iqbal in Rule 8, I believe it was sufficient enough. If you were allowed to amend, what would you say about eight milligrams? What would you point to to show that that is, in fact, dangerous? I guess is what you're saying. Something along the lines more than the natural medicines database, but there are other literatures. I have some documents with me that I can read from, but it's very well known that that is too much melatonin to take at one time. Is that the amendment you would make? Yeah, that would be one. And then I would also more fully describe the warning that could have been made on the product. The product is no longer on the shelves anymore. The FDA pulled it, and they're actually selling pretty much a similar product under a different name, Mellow Munchies, now they call it, but Lazy Cakes was an adulterated product. Wait a minute, adulterated. So, again, we just had the front of the label, but the back of the label said how much melatonin is in it. And so what you think wasn't disclosed, if I'm, I mean, please correct me if I'm wrong, is that that much melatonin might cause, might be risky. Is that right? Yes, Your Honor. The risk is sleep. It's not, I guess some people get nauseous from too much. They could, but mostly too much melatonin, they're going to sleep. It's going to put them right to sleep. And after suffering slurred speech, and someone who's not familiar with it, it's a pretty scary experience for them to not know what's going on. So, counsel, when you say put them to sleep, you keep coming back to that, and that's my problem, because the complaint says you were intending to buy a sleep aid. So I don't think, sleep isn't what you're complaining about, right? Well, and that's something that would also be cured through amendment, that he bought it to relax, not to fall right asleep. And that's what would be cured in the amended pleading. Okay. They sell martinis for that. Yes, Your Honor, but they don't sell, you know, alcohol, well, they might, but alcohol like Lays brownies, and essentially it's a snack food, and it's all about the reasonable consumer and their expectation, and they're likely to be deceived. You buy a product, you think it's going to help you relax, and then you have exhaustion and slurred speech, and then fall asleep, and it's just not what the reasonable consumer expected, and not what the opponent expected. One of the things I really hadn't thought about, but it seems like your concern here is really focused on the experience that your client had. Now, I think you would readily admit that different levels of melatonin affect different people differently. This is a class action fairness case. How do we know that your guy is representative of this class? I mean, maybe many people bought these things and were very happy with them. Well, Your Honor, I did research into that, and there were numerous reports to poison control centers. I know Arkansas pulled the product. The FDA pulled the product. A couple senators introduced legislation attempting to curb these supplements within food products, that they're not safe and especially not safe at this dosage. With the FDA, they just said it's not safe really at any dosage because it's not approved within food products, but from our standpoint. So the FDA is okay with over-the-counter marketing of melatonin and valerian sleep supplements, but not okay with baking them into food products? Yes, Your Honor. And that's stated in the FDA warning letter that was attached. The FDA warning letter was actually issued after the fact, right? Well, here, the timeline of events was the appellant purchased on May 18th. Our notice letter was sent May 31st. The FDA warning letter was July 28th. So that's another way of saying yes. The FDA letter was issued after the fact. Yes, after the purchase before we filed. Okay. Yes. And, you know, within the complaint, within paragraphs 38, 39, 40, kind of spell out my argument here. 38, based on the advertising and labeling of the products and the omission of material facts of the labeling, the client purchased the product. Nothing in the advertising, labeling, packaging warned of the particular dangers of consuming this much melatonin in one sitting. And that it's a potentially dangerous product because of the eight milligrams of melatonin. And what dangers precisely did your client suffer, did you plead, or could you plead if you amended? We did plead. He suffered extreme fatigue, exhaustion, slurred speech, and it put him to sleep. And, you know, I understand that relaxation can be grouped into, you know, up before sleep, but it's much different than slurred speech and being incoherent. Does the complaint say incoherent? Well, slurred speech, I'm taking as incoherent. All right. Would you like to say some time? I'll reserve five for rebuttal or whatever time I have. Five minutes, please. Okay, that's just fine. We'll hear from opposing counsel. May it please the Court, my name is Louis Jordan, and I'm here on behalf of HPV this morning. First of all, I would like to discuss the denial of the amendment. I think that's a critical issue to begin. I have a question for you. Yes. I like to relax. I imagine a lot of people like to relax before going on a drive. Taking melatonin before going on a drive would be really stupid because it's a sleeping pill. Your body secretes melatonin to tell you it's time for you to go to bed. It secretes melatonin when it gets dark. Why isn't it actionable if the label does not tell people it's going to make you sleepy? The label did actually say that on the packaging. Where is that? All I saw was this relaxation. We don't have it. I think even the complaint itself, I believe, refers to the fact that it says it may cause drowsiness. Could you point to it? Excuse me, Your Honor. I'm looking at the picture here. It just says relaxation baked in. On the reverse label, Judge, I believe the complaint, the plaintiff's own complaint, refers to that. Just tell me the page. I'm sorry, Judge. I'm looking for that right now. Will you bear with me one second, please? And, Judge, I will give you one second. I actually believe that that was referred to. I'm looking for actually the plaintiff's own complaint, if you'll bear with me one second. I don't remember it. That's why I'm asking. I believe that in the plaintiff's own complaint, Your Honor, it averted the fact that there was the fact that it said may cause drowsiness. I can assert that. May cause drowsiness on the reverse of the package, I think. Oh, I see what you mean. It was 26. Paragraph 26 on page 66. And I apologize, Judge. This product does not warn or the potential drowsiness of lazy cakes is listed only in small black print on the outer package of the product. Is that what you mean? Yes, Your Honor. And to the court's point, I would concede this. Unequivocally, I can concede that I don't want to take a substantial amount of melatonin, whether it be an over-the-counter supplement or this product, and then go drive eight hours. That's absolutely a valid point that the court makes. But if this was a product that was labeled stimulant brownie or a brownie that will wake you up, and then we had melatonin in it, that would be a horrific problem for my argument in this case. And your point about not wanting to take melatonin and drive a car would be unequivocally correct. But in this case, we have a mechanism. And the way that this is, this is a mechanism for delivery of melatonin. It happened to be in the form of an item that looked and smelled like a brownie. But it's no different than the same mechanism of that over-the-counter supplement you referred to. You can get in any health food store or grocery store. The mechanism in which it went into your body was in the brownie form, not a pill form, but it's still melatonin. I think you may have a real problem, counsel, if you're selling a brownie with a lot of melatonin in it and you don't tell people what melatonin can do. But it seems to me that the complaint eliminates any question along this line because the complaint tells me that the plaintiff was intending to purchase a sleep aid. And in the circumstance, Your Honor, I think that the point the court makes, I can see playing out in this factual scenario. Let's say that I have the brownies, for whatever reason, I have them in a store on a counter. And for whatever reason, the court decides to take them out of their packaging and just put them on a tray for sale and say, brownies. And then someone purchases that without a wrapper on it, without something that says relaxation baked right in. Then I have a real problem because I've now removed that from the package. I have something that has no warning about its intended consequences. But I think that the most parallel case that I've found, there's a case the ---- Could there be something? I don't know if this plaintiff would have standing, but does there have to be something on the package so that people don't pick it up on the way to the church bake sale when they didn't have time to bake and put it out on a platter? I think that if you ---- I think it would be the same of any kind of food product. But if you're putting it out in a bake sale, you're taking it out of the wrapper, then I think that may fall to the person doing that act in absolutely changing the very packaging and nature of that product and effectively having that third party, that intervening party, basically recharacterize what that food product or supplement product is. It would be no different than if I go into my church banquet and decide I want to put everybody to sleep for the sermon that evening and I take melatonin pills and put them in the tea. Again, it's that third party intervening in that chain that could recharacterize what that product is. So in that case, again, I think that there would be a different situation. But I think that the crux of this case, and again, we cite to the Sugawara versus Petsico case. It's the case that I think very closely tracks this case as far as what we look to for the reasonable consumer. I think the word reasonable, if there was ever a case where we have, where the court looks and has to decide what reasonable is, that case and this case closely paralleling would have to be the prime examples. That case was the Crunchberry case where, believe it or not, Petsico, who was under license to make Captain Crunch cereal with Crunchberries, got sued. And they got sued because there was not sufficient berry content in the Crunchberry. Now, in that case, it's important for two reasons. The claims asserted in that matter very closely parallel, almost identical to claims in this case. They're literally almost verbatim. Even the common law claims are similar. And in that case, the court said, you may not amend. There is no curative amendment that you can have. So when the case was dismissed under 12b-6, they were not going to leave to amend. And counsel, in his excellent argument, tried to propose some issues that might help amend this complaint to cure some issues. But this is what I'd like the court to think when considering that issue, because that is pivotal. I think we get to that issue very quickly in this case, because if he's allowed to amend, then curative issues may happen and we'll have to address this matter again. But I don't think he gets there, because to amend this complaint, he actually doesn't even have to add. He has to remove from his complaint. He has to do things, for instance, like take out a provision where in the plaintiff's own complaint it says, this is paragraph 17 of the complaint, citing part of that paragraph, all potential risk of melatonin may not be known in research as to its efficacy, safety, and side effects, and proper dosage is inconsistent and inconclusive. So what Your Honor raised, what's the appropriate dose, our dosing amount is listed. It says 8 milligrams. It talks about the serving size. So to amend, the plaintiff himself has to extricate from his complaint one of the very things that gives support to why it should be dismissed. So not only do they have to amend to try to grasp at some additional facts to insert into the complaint, they now have to remove facts that will absolutely torpedo whatever they try to insert. Another important issue is understanding that this is not a claim for any type of personal injury. This is a claim where there's an economic loss claim only. So it's nice to say, well, my client had slurred speech and had all these problematic effects, but that's almost the red herring in the case because it tries to make it sound like there's some injury being claimed, a bodily injury.  But think about what he spent the $9 for. He wanted a sleep aid that made him relax that had melatonin. So isn't his complaint that I knew I was buying a sleeping aid, I intended to buy a sleep aid, I knew it had melatonin in it, and maybe because of other reasons, maybe because of what was on the Web, but we don't know what was on the Web because we don't have that on the record, he knew he was buying a sleep aid. And his complaint is I spent, I thought it was $11, but anyway, dollars, a few dollars, and I wouldn't have spent it if I had known that there was a risk or some risk presented by taking too much melatonin. Isn't that the complaint? It is, but here's why that still fails. He knew he was buying 8 milligrams. It says it on the package of melatonin. So how is that any different? Well, in your argument, forgive me for interrupting, he's admitted that. He knew he was buying something with melatonin in it, and he knew how much melatonin, and the complaint says all risks about melatonin may not be known, right? Correct. Absolutely. But think about this. Does this same person get to come back here if he buys melatonin over-the-counter as a food supplement and buys 8 milligrams, which, by the way, the complaint very carefully states. One of their concerns is that, again, we talked about the delivery mechanism, brownie versus pill. They seem to have concern that the brownie, for the same dosage, costs more than if you went to simply buy an 8-milligram supplement at the health food store. In responding to your question, if that is his argument, that I have a situation where I would not have bought it had I known what 8 milligrams would do, then why can that same consumer not come here or go to federal district court and file a complaint saying I bought an 8-milligram supplement at the store and I didn't know what 8 milligrams was going to do, I wanted to relax, so I bought melatonin and I had slurred speech and it made me sleepy. Again, he purchased a relaxation brownie, he got exactly the dosage he wanted, and it made him sleepy. So, yes, Ron? If I might inquire, much of what you say, I think, well, I understand it, but what if he were to amend his complaint to allege that it's being sold as a food supplement and melatonin isn't an approved supplement in food? The fact that he was claiming it was an adulterated food, at the time, he bought it at the time knowing that it had melatonin. And, again, it was a food, it is a supplement to a food. It is not considered to be an approved, as the FDA letter said, added to a regular food. But, again, we go back to the reasonable consumer test and whether or not it is an inappropriate supplementation and the FDA believes it was being marketed as a food, again, doesn't cure the problem with the complaint that he purchased what he thought he was getting, which was a food or a supplement that contained melatonin. If it was a situation where he was simply going online... The problem is that all it says on the front of the package in big print is that it's for relaxation, and that is not the primary effect of melatonin. The primary effect is sleepiness. That strikes me as the heart of the misleading aspect that he's pleading. If you read the back, you can see that it has melatonin, and if you research, if you Google melatonin, you'll find out that it causes many, though not all, most but not all people to become sleepy. But the front of the package doesn't say sleep aid. It says relaxation aid. That strikes me as the misleading part. Often people go to a party after work with their friends. They'll often have a drink because they want to relax and enjoy the social event. They do not want to fall asleep at the table. Relaxation is different from sleep, even though it can be an aid to sleep. Why can't he amend to just make it a little clearer that that's what he's complaining about? Because I think at that point, if you allow the amendment solely on that threshold where relaxation turns into sleep, I think at that point, again, we move away from what the reasonable consumer would think. Isn't the bigger problem? There are two different things. Forgive me. Oh, sorry. No, no, I interrupted you. Please. Relaxation, people like to relax when they're on vacation, but they don't usually want to sleep all day. They hike, or they go to Disneyland, or they go shopping or something. That's different from sleeping. I agree, but I think what you brought up earlier was the fact that melatonin, and even the plaintiff's own complaint says the results, the dosage, are inconclusive and incomplete. Well, it's not just the dosage. The sleep dosage, it varies so much with individuals and so much is unknown. But sometimes people think, some people say valerian makes you relax, but melatonin, it just makes you sleepy. And I think that by labeling the back where it says may cause drowsiness, I think that that's appropriate because it's not inconsistent, and this is going, there's the Gerber case, Williams v. Gerber, where we talked about having things that are completely inconsistent on one side of the packaging and having to flip and find something that's not anywhere close to what the initial labeling says. Again, going back to what I said earlier, if this brownie said stimulant brownie or stay awake brownie, and then you flip it over and it says may cause drowsiness, this is a real problem. At Shugawara case, it's really not binding on us. It's just a federal district court case. Absolutely. It's not a California Supreme Court case. It's not even a Cal App case, which we would use as an indication of what the Supreme Court of California might do. It's just another court looking at a product that suggests it has berries in it and it doesn't. I absolutely agree. The only reason I brought that case up is it seems to be a case which in some way tracks this case, again, getting into what a reasonable consumer would say. We have the Gerber case where the court found that there was a deception, or at least it was plausible and not appropriate to dismiss under Rule 12b-6. In this case, again, if you look at the reasonable consumer and ask what the reasonable consumer was trying to buy, and I know I'm out of time. May I finish the thought? Yes, of course. In looking at what the reasonable consumer knew he was buying and asking where was the deception. If there wasn't eight milligrams of melatonin in it, there would be deception. If this brownie had a stimulant effect, there would have been deception. If you look at this complaint and even think of all the language that can be either inserted or pulled out of that complaint, there still doesn't rise to the level of violation of those statutory provisions or claims in common law. Thank you very much for the court's time this morning. Thank you, Counsel. Counsel, you have a couple of minutes left on the clock if you'd like to use them. Thank you, Your Honor. I thank my opposing counsel for his eloquent argument. And I know he pointed out Williams v. Gerber, which is about the front versus the back. Here we have the front saying relax and the back says may cause drowsiness. And the back, it lists the amount of melatonin, but not too many people know the true effects of melatonin. And I think, you know, and counsel argued about certain names or certain energy products. This product essentially should have been called Sleepy Time Brownie. What if it had been called Sleepy Time Brownie? Your complaint says that your client intended to purchase a sleep aid. And that needs to be properly- Wait, wait. You can't just change the facts. If that's what he intended, you can't go back and change that. I mean, is the complaint saying that now untrue? That he intended to buy a relaxation agent, not a sleep aid. What he pled is not true. That was- That troubles me, that you would go back and change what his intent was. Presumably you talked to him, you thought about this, and you represented to the court in this pleading that that's what he meant to do. And, Your Honor, prior counsel on the case was the one who drafted the complaint. He's no longer on this case. I'm not accusing you of that, but, I mean, doesn't it trouble you to go back and change what your client is representing to the court? It does, but it's also my job to tell the court the true facts and nothing but that. And that's what it- I appreciate your candor, but, so here we are. It's in the complaint, setting aside who drafted it for a minute. Is opposing counsel correct that in order to avoid this problem, if you were to go back to amend, you would need to remove something from the complaint? Well, I would change that language, but I would also discuss that the main thing here is that it's in a food. It's not a pill that you buy specifically melatonin. It's a brownie, and you eat- a lot of times people eat it without looking at the back. And most consumers, even if they did see the eight milligrams that it contains on the back, they wouldn't know that that's going to cause them to fall asleep instead of just relax. And that's really the crux of the case, is the difference between relaxing and falling asleep. Thank you, Robert. I have one question. The crux of the case is the difference between relaxing and falling asleep, yet you do concede that on the back of the package it specifically said it was a risk of drowsiness. Yes, Your Honor. That's pled in, I think it's paragraph 26 of the complaint. I guess you didn't draft it, but somebody did. And I didn't have a copy of the real label, but I pulled one off that I found online. Very small down here. It says may cause drowsiness. That's not in our record, is it? It's not. All right. We won't hear about it then. But we would add that if we had a chance to, then. Thank you, Your Honor. Thank you, counsel. We'll submit that case. Thank you both for your excellent argument.
judges: Sedwick, Kleinfeld, Christen